**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**KENNETH KINGSBY,**
           **Plaintiff,**

    v.                                                              Case No. 06C0679

**JOHN E. POTTER, Postmaster**
**General of the United States,**
           **Defendant.**

---

## DECISION AND ORDER

Pro se plaintiff Kenneth Kingsby brings this action complaining of the conduct of defendant, the Postmaster General, and the Postal Service ("USPS"), his former employer. Plaintiff's allegations are confusing, but they appear to implicate the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 791, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2617, and the Privacy Act of 1974, 5 U.S.C. § 552a(g)(1)(D). Before me is defendant's motion to dismiss.

## I. BACKGROUND

In June 2006, defendant gave plaintiff notice that he intended to terminate his employment as an equipment operator due to excessive absences. Plaintiff complained of discrimination and after an investigation and hearing, on January 31, 2006, an Equal Employment Opportunities Commission ("EEOC") administrative law judge ("ALJ") issued a decision in plaintiff's favor. Plaintiff attaches such decision to his complaint. The decision states that plaintiff suffers from severe asthma and sinusitis, that he discussed his condition with supervisors and with the FLMA Coordinator and gave them a doctor's note stating that he should be transferred to light duty and would likely be unable to work

for one to three days each month. After missing several days of work, plaintiff requested FMLA protection for his absences, but based on the doctor' note, defendant refused to grant such protection for more than three absences per month. Defendant then terminated plaintiff's employment.

The ALJ found that defendant had violated the Rehab Act by failing to reasonably accommodate plaintiff's disability. He concluded that defendant could have "refrained from basing disciplinary action on appellant's disability-related absences," offered him a modified job schedule, restructured his job or reassigned him. (Attach. to Compl. at 8.) The ALJ found that plaintiff was entitled to make whole relief such that he should be restored "'to a position where he would have been were it not for unlawful discrimination.'" (Id. (quoting Franks v. Transp. Co., 424 U.S. 747 (1976))). He then stated that plaintiff was not "seeking damages arising out of his removal," and thus back pay was not appropriate. (Id.) Instead, the ALJ found that plaintiff was "seeking damages arising out of the [government's] failure to accommodate his disability, and from the issuance of the Letter of Removal and other occurrences arising from its failure to accommodate." (Id.) The ALJ concluded that plaintiff was entitled to damages in the amount of $3,000 to compensate him for depression associated with the "Letter of Removal" and attorneys fees and costs. (Id. at 9.)

Plaintiff does not make clear how the present action relates to the ALJ's decision. Plaintiff alleges that he is suing defendant "on the basis of discrimination, aggravation to illness and also wrongful and unlawful removal from postal service employment." (Compl. at 3.) Plaintiff may be alleging that he is entitled to reinstatement or damages under the Rehab Act or the FMLA on account of his termination. Plaintiff also alleges that defendant

2

has failed to comply with the ALJ's decision insofar as defendant has not made him whole and restored him to the position he would have been in if not for the discrimination. Plaintiff may be attempting to enforce or to appeal the ALJ's decision. Finally, plaintiff alleges that defendant altered his medical documentation to make it appear that he had exceeded the number of absences allowable under FMLA and that it kept such documentation in the FMLA coordinator's office, as opposed to the medical unit, possibly in violation of the Privacy Act. Here, plaintiff may be seeking damages under the Privacy Act. He requests $300,000 in damages and asks "to make whole" – possibly a reference to reinstatement. (Compl. at 6.)

Defendant contends that regardless of the claim that plaintiff is attempting to state, he has failed to state any claim and presents numerous documents in support of this contention.

## II.  STANDARD

A motion to dismiss under Rule 12(b)(6) raises the question of whether a complaint states a claim upon which relief may be granted. GE Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997). A complaint or portion thereof may be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even accepting all of the alleged facts, the plaintiff has no legal claim. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999). In reviewing a complaint under this standard, the court must

3

accept as true the plaintiffs allegations, Hosp. Bldg. Co. v. Tr. of Rex Hosp., 425 U.S. 738, 740 (1976), and construe the complaint in the light most favorable to the plaintiff, resolving all doubts in his favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Further, I construe a pro se plaintiff complaint liberally. Mallett v. Wis. Div. of Voc. Rehab., 130 F.3d 1245, 1248 (7th Cir. 1997).

Generally, a court may consider matters outside the pleadings in deciding a motion to dismiss only if it converts the motion into one for summary judgment. Fed. R. Civ. P. 12(b). There are exceptions to this rule. A court may consider documents attached to the complaint without converting the motion. In addition, a court may consider documents that are attached to the motion to dismiss if such documents are referred to in the complaint and are central to the plaintiff's claim. See Fed. R. Civ. P. 10(b); 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002). Finally, a court may consider documents in the public record without converting the motion. Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

Thus, I may consider the ALJ's decision, which is attached to the complaint and as Exhibit 4 to defendant's motion, without converting the motion into one for summary judgment. Further, I may consider the removal letter attached to defendant's motion as Exhibit 11, as it is central to plaintiff's claim and is referred to in his complaint, and the copy of an EEOC decision unrelated to the present case, which defendant attaches to its motion as Exhibit 12, as it is a matter of public record. However, defendant's remaining exhibits do not fall within any exception to the general rule that a court may not consider matters outside of the pleadings in deciding a motion to dismiss. Defendant asserts that each of the exhibits are either central to plaintiff's claims or are matters in the administrative record.

4

However, none of the exhibits (other than the ALJ's decision and the removal letter) are referred to in plaintiff's complaint and it is not clear that they are central to his claims. Further, while some of defendant's exhibits may be in plaintiff's administrative employment record, it is far from clear that they are matters of public record. As such, defendant's exhibits cannot properly be considered as part of a motion to dismiss. And while I may, in my sound discretion, convert defendant's motion into one for summary judgment, I decline to do so. Instead, I will decide the motion to dismiss without considering the additional material.

### III. DISCUSSION

#### A.   Rehab Act

Section 501 of the Rehab Act, as amended, creates a private right of action for federal employees complaining of discrimination based on disability. The "remedies, procedures, and rights" for such action are found in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and include reinstatement, back pay and other compensatory damages. 29 U.S.C. § 795; McGuinness v. United States Postal Service, 744 F.2d 1318, 1319 (7th Cir. 1984). Under such statute, before initiating a discrimination suit, a federal employee must exhaust administrative remedial procedures. McGuinness, 744 F.2d at 1320.

As I discuss below, the legal posture and standard of review varies for a Rehab Act claim depending on whether the claim is characterized as an appeal of a decision on a "mixed case" complaint (defined below), as an appeal of a decision on a "pure discrimination" complaint or as an "enforcement action." It is unclear from plaintiff's

5

complaint which of these characterizations is appropriate for his claim. Thus, I will address whether plaintiff has stated a claim under the Rehab Act, looking to each of the possible characterizations of such claim.

### 1. Mixed-Case Appeal

Defendant concedes that plaintiff administratively exhausted a claim of discrimination, but asserts that plaintiff did not exhaust a claim of wrongful termination associated with such discrimination. As such, defendant argues that if plaintiff is claiming wrongful termination on the basis of discrimination, then such claim must fail.

The administrative procedures for a federal employee challenging termination on the basis of discrimination are quite complex. In outlining such procedures, I will first discuss how a USPS employee ordinarily exhausts a claim of discrimination. Then, I will describe how things become more complicated when that employee is entitled to additional protection by the Merit Systems Protection Board ("MSPB").

Generally, a USPS employee must undergo pre-complaint counseling with the USPS Equal Employment Opportunity ("EEO") office, then – if the concern is unresolved – file a formal complaint with that office, which investigates the charges. 29 C.F.R. §§ 1614.105-1614.108. At the close of the investigation, the EEO office provides the complainant with the investigative file and notifies him that he may request an immediate final decision by the USPS or may request that the EEOC hold a hearing and make a recommendation to the USPS before the USPS issues a final decision. § 1614.108(f). If the employee requests a hearing, the EEO office sends the investigatory file to the EEOC, which appoints an ALJ to hold a hearing and issue a written decision recommending to the

6

USPS a course of action. 29 C.F.R. § 1614.109. The USPS then issues its final decision. 29 C.F.R. § 1614.110. In that decision, the USPS may carry out the ALJ's recommendation or may appeal that decision with the EEOC. Id. Regardless of whether the employee received a hearing or not, upon receipt of the final USPS decision, the employee may either appeal such decision to the EEOC or file a civil action in federal district court and receive a de novo trial on his claims. § 1614.110.

Shifting gears, the MSPB is a body to which some employees are entitled to appeal adverse employment decisions. 5 U.S.C. § 7701. Generally, an employee who loses an appeal to the MSPB may appeal the MSPB decision to the Federal Circuit and the Federal Circuit applies a deferential standard of review. Id. Given the different procedures for an EEOC complaint and a MSPB appeal, and the different routes to federal court and standards of review arising from the two procedures, matters get confusing where an employee entitled to MSPB review of termination is terminated and that employee also alleges discrimination. To initiate his case, such an employee has a choice of forums. 5 U.S.C. § 7702. He may either file an "appeal" of the termination with the MSPB, alleging discrimination as part of that appeal (a "mixed-case appeal") or he may file a "complaint" of discrimination arising from the termination with the USPS EEO office (a "mixed-case complaint"). Id.; 29 C.F.R. § 1614.302(a). He may not file both a mixed-case complaint and a mixed-case appeal; whichever body received the employee's petition first has exclusive jurisdiction over the initial decision in the case and the other body, if it subsequently receives an appeal or complaint, must dismiss it. § 7702; § 1614.302(b).

7

Where the employee elects to file a mixed case complaint with the EEO office, that office conducts an investigation just as it otherwise would.[1] § 1614.302(d). However, at the end of the investigation, it does not give the complainant the opportunity for a hearing, but simply issues a final USPS decision. Id. At that point, the complainant is notified that he may either appeal the USPS decision to the MSPB (but not the EEOC, as in a pure discrimination complaint) or file a civil action in federal district court. Id. Where the complainant files a civil action in a district court, the court faces a mind-bending task: it must review the propriety of the termination deferentially while reviewing the discrimination claim de novo. Major Leonard F. Rippey, Motions for Summary Judgment in Mixed Cases: Using Matsushita and the MSPB Adjudication to Increase Plaintiff's Pretrial Burden, 38 A.F. L. Rev. 109, 117-18 (1994); C. Annette Harden, Mixed Cases: Untangling the Procedural Web, 29 How. L.J. 371, 384-85 (1986).

In the present case, defendant asserts that plaintiff only complained that he was entitled to reasonable accommodations and did not complain of his termination. However, this is not clear. The ALJ's decision attached to plaintiff's complaint establishes that the USPS EEO office did not treat plaintiff's EEO complaint as a mixed-case complaint.[2] Further, in discussing damages, the ALJ stated that plaintiff "was not seeking damages arising out of his removal." (Attach. to Compl. at 8.) However, these two facts are odd

---

[1] I will not further complicate matters by describing the procedure for an employee who elects to file a mixed-case appeal with the MSPB, as the decision attached to plaintiff's complaint indicates that plaintiff clearly did not use such procedure.

[2] If the EEO office had treated plaintiff's complaint as a mixed-case complaint, plaintiff would not have been granted a hearing before an ALJ with the EEOC. § 1614.302(d).

8

given that the ALJ stated that the question before him was whether plaintiff "was discriminated against on the basis of his disability when he was denied reasonable accommodations." (Id. at 2.) And, after finding that plaintiff was discriminated against, the ALJ stated that the USPS should have reasonably accommodated plaintiff, in part, by not terminating his employment based on plaintiff's disability-related absences. (Id. at 8.)

Thus, if plaintiff is challenging his termination on the basis of discrimination, this case may present some interesting questions. First, if plaintiff's EEO complaint did not state that he was challenging his termination or seeking reinstatement, but clearly implicated the lawfulness of his termination, should the EEO office have nevertheless treated it as a mixed-case complaint? And where the EEO office mistakenly treats a complaint as a pure discrimination complaint, should a district court treat a wrongful termination claim as administratively exhausted? See Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994) (stating that while a district court cannot consider discrimination claims that were not included in the plaintiff's administrative complaint, it may consider claims that are reasonably related to the allegations in the complaint or that grow out of the allegations in the complaint). And even if plaintiff did not administratively exhaust his claim, should the court excuse such failure? See Broom v. Caldera, 129 F. Supp. 2d 25, 29 (D.D.C. 2001) (excusing a federal employee's failure to properly exhaust his mixed-case appeal, due to confusion as to the administrative procedures). Such questions may be appropriate for resolution though summary judgment. However, at the present time, it is not even clear that this case raises such questions, much less how to resolve them.

9

## 2. Pure Discrimination Appeal

Of course, such questions need not be answered at all if plaintiff intends simply to challenge the USPS decision on a pure claim of discrimination – one independent of his termination. As indicated above, plaintiff has clearly administratively exhausted a pure discrimination claim and would be entitled to a de novo trial on such a claim. See Chandler v Roudebush, 425 U.S. 840, 858 (1976).[3] A plaintiff seeking a de novo trial on his discrimination claim may not appeal only the EEOC's finding of damages while standing on the EEOC's finding of liability. Laber v. Harvey, 438 F.3d 404, 418-24 (4th Cir. 2006) (en banc).[4] Rather, the employee must either accept or appeal the entire decision.

Defendant assumes that, if plaintiff is appealing the discrimination decision, then he is attempting to appeal only the ALJ's damages calculation without also appealing his finding of liability. While, as stated above, plaintiff may not appeal the EEOC decision piecemeal, it is not clear that this is his intention. Though plaintiff's complaint states that the USPS has failed to comply with the EEOC decision, it also states that the USPS discriminated against him. Construing such complaint liberally in plaintiff's favor, Mallett, 130 F.3d at 1248, plaintiff may be appealing the entire USPS decision.

---

[3]Or, if there are no material issues of fact, plaintiff would be entitled to de novo judicial review of the facts. See Smith v. Derwinski, Case No. 90C5514, 1993 U.S. Dist. LEXIS 5948 (N.D. Ill. May 4, 1993).

[4]Until recently, the circuits had split on this question, with the Fourth Circuit standing alone in its holding that a Rehab Act claimant may rely on the EEOC's finding of liability while challenging an insufficient award of damages. Laber, 438 F.3d at 423-24. However, the Fourth Circuit recently joined the Third, Tenth, Eleventh and DC Circuits in finding otherwise. Id. I agree that the plain language of § 2000e-16(c) and the Supreme Court's decision in Chandler compel the conclusion that a Rehab Act claimant may not challenge a damages award alone. See id. at 418-21.

10

### 3. Enforcement Action

A federal employee who has received a favorable decision on a discrimination complaint may file a civil action in federal district court to enforce such decision. 42 U.S.C. § 2000e-16. An employee bringing an enforcement action does not challenge any portion of the agency decision, but rather demands that the agency fully implement the decision. Defendant asserts that if this is plaintiff's intent, then such claim must fail because the USPS has fully complied with its decision. However, based on plaintiff's complaint and on the documents that I may appropriately examine without converting the motion to one for summary judgment, it is not clear that the USPS has done so.

### B. FMLA

The FMLA makes available to eligible employees up to twelve weeks of leave during any twelve-month period for a serious health condition, 29 U.S.C. § 2612(a)(1)(D), including serious chronic asthma, 29 C.F.R. § 825.114(a)(2)(iii); § 825.114(e). A USPS employee is an eligible employee for FMLA purposes. 29 C.F.R 825.109(b)(1). Such an employee, at the conclusion of a qualified-leave period, is entitled to return to his former position of employment, or to an equivalent one, with the same terms and benefits. 29 U.S.C. § 2614(a). An eligible employee may enforce his FMLA rights through a civil action in federal district court. 29 U.S.C. § 2617(a)(2). A FMLA plaintiff may seek reinstatement, back pay and other compensatory damages. § 2617(a)(1); Harrell v. United States Postal Serv., 445 F.3d 913, 928-929 (7th Cir. 2006). And such a plaintiff is not required to exhaust administrative remedies. 29 C.F.R § 825.400. Where an employer takes action

that violates both FMLA and the Rehab Act, an employee may recover under either or both statutes, though he may not receive double relief. 29 C.F.R § 825.702.

Plaintiff's complaint appears to state a claim under the FMLA. Defendant's motion to dismiss does not address any such claim.

**C.    Privacy Act**

The Privacy Act of 1974 regulates how federal agencies may collect, use and disseminate personal information about individuals. § 552a. It bars agencies from disclosing an individual's personal information without his written consent, except for specified purposes, § 552a(b), and requires agencies to maintain any record concerning any individual "with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record," § 552a(g)(1)(C). Further, it gives individuals the right to gain access to any record pertaining to him and request that a record pertaining to him be amended. § 552a(d). And it creates a private right of action for any individual injured by an agency's violation of such provisions. § 552a(g)(2). It contains a two-year statute of limitations. § 552a(g)(5). The limitations period begins to run "when the plaintiff first knew or had reason to know of a violation." Davis v. United States DOJ, 204 F.3d 723, 726 (7th Cir. 2000).

Defendant asserts that plaintiff's Privacy Act claim is time barred. However, this is not clear from the face of plaintiff's complaint or from the documents appropriate for examination at this time.[5]

---

[5] I note that even if I were examining defendant's Exhibit 13 at this time, it is not clear from that document whether the phrase "for the past six years" modifies the phrase relating

## IV. CONCLUSION

**Therefore,**

**IT IS ORDERED** that defendant's motion to dismiss is **DENIED**.

Dated at Milwaukee, Wisconsin, this 26 day of February, 2007.

/s_____
LYNN ADELMAN
District Judge

---

to handling of medical records.  (See Ex. 13 to Def't's Mot. to Dismiss.)

13